FILED US District Court-UT
DEC 21 '20 AM 08:42

**JAMES L. HARRIS, Jr.** USB # 8204
Attorney for Plaintiffs
556 East 2100 South
Salt Lake City, Utah      84106
Telephone: (801) 466-3133
Facsimile: (801) 438-4818
jlharris65@q.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NICHOLAS LEANDRO RAMOS, and JOSHUA GRAVES,<br><br>Plaintiffs,<br>vs.<br><br>RANLIFE HOME LOANS, RANLIFE INC,<br><br>Defendants. | Case: 2:20-cv-00896<br>Assigned To : Kimball, Dale A.<br>Assign. Date : 12/21/2020<br>Description: Ramos v. Ranlife Home Loans et al<br><br>**C O M P L A I N T**<br><br>(Jury Demanded) |

PLAINTIFFS, NICHOLAS LEANDRO RAMOS and JOSHUA GRAVES, by and through counsel, JAMES L. HARRIS, Jr., as a complaint and cause of action against the Defendants state and allege as follows:

PRELIMINARY STATEMENT

1. This is an action brought for religious discrimination, sexual orientation discrimination, harassment, and hostile work environment under 42 U.S.C. § 2000e et. seq (Title VII of the Civil Rights Act of 1964) as amended. Plaintiffs seek attorney fees and costs under 42 U.S.C. § 1983 (Title VII) and 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

2. Jurisdiction is provided for under 42 U.S.C. § 1983 and § 1988 as well as 28 U.S.C. § 1331 and §1343 and further arises under the United States Constitution. Declaratory relief is authorized by 28 U.S.C. § 2201 and § 2202 and Rule 57 of the Federal Rules of Civil Procedure.

3. Venue is proper in the United States District Court for the District of Utah because the mis-conduct of Defendants occurred in Salt Lake County, State of Utah.

4. The court has personal jurisdiction over Defendants RANLIFE HOME LOANS, and RANLIFE, INC. (hereinafter "RanLife").

5. RanLife is a for-profit Utah Corporation. At all times relevant, RanLife operated its business within the State of Utah.

## PARTIES

6. NICHOLAS LEANDRO RAMOS (hereinafter "Ramos") is a resident of Salt Lake City, Utah at times pertinent to this action.

7. JOSHUA GRAVES (hereinafter "Graves") is a resident of Salt Lake City, Utah at times pertinent to this action.

8. DEFENDANT RANLIFE HOME LOANS, and RANLIFE, INC. are both "employers" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b).

## FACTS RELATED TO NICHOLAS LEANDRO RAMOS

9. Ramos was an employee of RanLife from July 5, 2017 until May 20, 2019.

10. Ramos became a Level 2 Loan Officer on November 1, 2017, and was moved under the management of Paul Greager ("Greager").

2

11. The main instigator of the inappropriate behavior was Ramos's supervisor Greager.

12. Greager regularly discriminated against Ramos based on Ramos's religious beliefs.

13. Greager regularly discriminated against Ramos insinuating that Ramos was gay.

14. Ramos's sexual orientation is straight.

15. Ramos is a member of the Church of Jesus Christ of Latter-day Saints (LDS Church).

16. Greager began calling Ramos a "gay fat Clark Kent" almost immediately when Ramos started working with Greager's team in November of 2017.

17. After Greager started calling Ramos a "gay fat Clark Kent" the nickname stuck, and Greager continued to call Ramos that name until Ramos felt he had to leave RanLife's employment.

18. Greager would tell Ramos that the founders of the LDS church and its members were perverts.

19. Greager would insist that member of the LDS church were hypocrites and closeted perverts.

20. Greager called Joseph Smith the founder of the LDS church a horny pedophile.

21. Greager stated, "I bet you give your bishop a mouth hub for repentance."

22. Greager made other homosexual references and innuendos toward LDS church leaders.

23. Greager regularly made comments like "You know how I know you like dick? Every time you burp, a cum bubble come flying out in a spectacular rainbow."

24. Ramos was told to suck Greager's penis. Greager used euphemisms like "veiny meat musket" and "tonsil tickler."

3

25. Greager threatened to "mushroom stamp" (slap with his penis) Ramos and other coworkers.

26. Greager told Ramos that Ramos had bad knees due to kneeling to perform oral sex on men.

27. Greager described to Ramos how he could kill everyone at RanLife.

28. Greager would take Ramos's name plate off his desk and rub in inside his pants on his genitals, and then throw it back to Ramos.

29. Greager described that while he was in the Marines, the LDS Church would send out copies of the Book of Mormon, and he would use the paper to roll cigarettes, or use for toilet paper.

30. Greager would tell this to Ramos knowing that Ramos held that book to be sacred.

31. Paul often yelled at Ramos. Greager stated that he would "bend you over, make you grab your ankles, fuck and rape you in the ass."

32. Greager said this wasn't a "gay" issue, but a dominance issue.

33. Greager tried to be physical with Ramos and tried hit Ramos in the groin.

34. Greager regularly used sexually charged banter. He regularly held meetings with sexually charged and inappropriate and uncomfortable conversation.

35. Greager would refer to women in the office by their breast size, including referring to an employee as "big tits."

36. Greager indicated that some of the women employees left "snail trails."

37. Greager would regularly and intentionally schedule team lunches at a local bar. Ramos was often pressured to drink.

38. Greager displayed pornographic videos on the office monitor of his office.

39. Greager would tell graphic renditions of sexual exploits during team meetings.

40. Greager orchestrated decorating a team member's office space with pornographic images and sex toys.

41. Thereafter, these pictures, and items would appear at Ramos's desk and work area.

42. When this behavior began, Ramos complained to Human Resources, to no avail.

43. Ramos believed that the response by Human Resources would only result in further retaliation.

44. The Human Resource director mishandled Ramos's initial complaint.

45. Defendants mishandled Ramos's complaints.

46. Thereafter, Ramos felt powerless to complain to Human resources.

47. Defendants and other supervisors knew of Greager's behavior.

48. Defendants did nothing to stop the unlawful conduct against Ramos.

49. Defendants fostered an environment that enabled Paul Greager to engage in illegal behavior against Ramos.

50. Defendants failed to properly supervise Greager.

51. Ramos felt he could no longer stay employed at RanLife.

52. Ramos's last day was May 20, 2019.

53. As set forth more fully below, Ramos exhausted his administrative remedies with the Utah Antidiscrimination and Labor Division and Unites States Equal Employment Opportunity Commission.

54. As set forth more fully below, Ramos received a Right to Sue Letter, and this complaint is brought within 90 days of that letter.

### FACTS RELATED TO PLAINTIFF JOSHUA GRAVES

55. Joshua Graves was an employee of RanLife from November 14, 2017 until April 30, 2019.

56. Graves became a Level 3 Loan Officer on August 1, 2018 and was moved under the management of Paul Greager.

57. While employed at RanLife, Graves was subject to repeated and pervasive unwelcome sexual based comments, images, and sex related paraphernalia.

58. The main instigator of the inappropriate behavior was Graves's supervisor Paul Greager.

59. Paul Greager regularly discriminated against Graves based on Graves's religious beliefs.

60. Paul Greager regularly discriminated against Graves insinuating that Graves was gay.

61. Graves's sexual orientation is straight.

62. Graves, Joshua Graves, is a member of the Church of Jesus Christ of Latter-day Saints (LDS Church).

63. Greager commented and talked negatively about co workers in the office that he thought were gay.

64. Greager started calling Graves gay and "faggot."

65. Greager started insinuating that Plainitff was gay.

66. Greager made comments like "Boy you sure have a pretty mouth" and "I bet you could suck a golf ball through a garden hose."

67. Greager sent e-mail suggestive and offensive e-mails to Graves

68. Greager said Graves was the "prettiest girl in school."

69. Greager sent an e-mail to the team with the following goal for Graves "Getting the purse you have been eyeing for the last month (that's for your Josh)."

70. Greager made comments to Graves like "Did you get your wife's pants mixed up with your pants today?"

71. Greager asked Graves "Why are you wearing my wife's pants to work."

72. Greager regularly used sexually charged banter in personal and written communications to Graves.

73. Greager would often reference his penis when communicating around Graves.

74. When Graves would approached with questions, Greager's answer was often "14 inches long, 10 inches around" which Greager often used to reference to his penis.

75. Greager ridiculed Graves for his beliefs and upbringing.

76. Greager routinely talked negatively about the LDS church and LDS co-workers, including Graves.

77. Greager told Graves and others that the founders of the LDS church and its members were perverts.

78. Greager stated that member of the LDS church were hypocrites and closeted perverts.

79. Greager called Joseph Smith the founder of the LDS church a horny pedophile.

80. Greager made other homosexual references and innuendos toward LDS church leaders.

81. Greager would change Graves's computer backdrop to inappropriate sexual images when Graves was away from his desk.

82. Greager displayed pornographic videos on the office monitor of his office.

83. Greager would tell graphic renditions of sexual exploits during team meetings.

84. Greager orchestrated decorating a team member's office space with pornographic images and sex toys.

85. These pictures and items would thereafter appear at Graves's desk and work area.

86. Greager singled out Graves and his wife after a team dinner when they would not attend a strip club with team members.

87. Graves suffers from ADD, which was known to RanLife.

88. Greager made comments insinuating that Graves was less intelligent.

89. Greager made comments like "let me Barny this down for you Josh" and "does everyone understand, or do I need to write it in crayon" while looking at Graves.

90. Greager physically intimidated Graves.

91. Greager told Graves to "get the fuck out of my office" and throwing a marker across the room toward Graves, and came toward Graves with hands clenched.

92. Greager retaliated against Graves when Graves.

93. Greager took clients away from Graves and gave those to other employees.

94. Graves was fearful to complain about these issues because Greager controlled Graves's earnings, and his prior retaliations.

95. Defendants did nothing to stop the unlawful conduct against Graves.

96. Graves felt powerless to complain to Human resources.

97. Defendants and other supervisors knew of Greager's behavior.

98. Defendants fostered an environment that enabled Paul Greager to engage in illegal behavior against Ramos.

99. Defendants failed to properly supervise Greager

100. Graves felt he could no longer stayed employed at RanLife.

101. Graves's last day of employment was April 30, 2019.

102. As set forth more fully below, Graves exhausted his administrative remedies with the Utah Antidiscrimination and Labor Division and Unites States Equal Employment Opportunity Commission.

103. As set forth more fully below, Graves received a Right to Sue Letter, and this complaint is brought within 90 days of that letter.

### FACTS RELEVANT TO BOTH PLAINTIFFS

104. Plaintiffs have incurred attorney fees and costs.

105. Plaintiffs are entitled to declaratory relief and seeks an award of damages as a result of that harm.

### CAUSE OF ACTION

106. Plaintiffs incorporate herein paragraphs 1-105 of their complaint.

107. Defendants have engaged in religious discrimination against the Plaintiffs during their employment.

108. Defendants have engaged in sexual orientation discrimination against Plaintiffs during their employment.

109. Defendants created a hostile environment and allowed harassment against Plaintiffs.

110. Defendants' conduct violates Title VII of the Civil Rights Act.

111. On or about November 13, 2020, Nicholas Leandro Ramos filed a timely Charge of Discrimination with the Utah Antidiscrimination and Labor Division.

112. On or about October 18, 2019, Joshua Graves filed a timely Charge of Discrimination with the Utah Antidiscrimination and Labor Division

113. Both Plaintiffs have satisfied all statutory prerequisites for filing this action.

114. On or about October 4, 2020 Nicholas Leandro Ramos received a "Notice of Right to Sue" letter from the EEOC.

115. On or about October 4, 2020, Joshua Graves received a "Notice of Right to Sue" letter from the EEOC.

116. Plaintiffs have filed this action under Title VII within ninety (90) days after receipt of their "Notice of Right to Sue" letters from the EEOC.

117. Defendants' discriminatory conduct, in violation of Title VII, has caused the Plaintiffs to both suffer loss of benefits and prestige.

118. Defendants' actions have caused Plaintiffs to suffer mental and emotional distress, entitling him to compensatory damages pursuant to 42 U.S.C. § 1981a.

119. Defendants have engaged in discriminatory practices with malice and reckless indifference to the Plaintiffs' federally protected rights, thereby entitling him to punitive damages pursuant to 42 U.S.C. § 1981a.

## RELIEF DEMANDED

WHEREFORE, PLAINTIFFS NICHOLAS LEANDRO RAMOS and JOSHUA GRAVES demand the following relief:

1. For a declaratory judgment and determination that the conduct of the Defendants as set forth above constitutes a deprivation of Plaintiffs' constitutional rights.

2. For damages for harm to NICHOLAS LEANDRO RAMOS's constitutional rights in a sum to be determined at trial, but in a separate amount of at least $500,000.00.

3. For damages for harm to JOSHUA GRAVES's constitutional rights in a sum to be determined at trial, but in a separate amount of at least $500,000.00.

4. For special and general damages in a sum to be determined at trial, but in a separate amount to each of at least $500,000.00.

5. For punitive damages in an amount to each in a sum to be determined at trial, but in a separate amount to each of at least $500,000.00.

6. For the costs of this action including attorney fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

7. For such other and further relief as the Court deems just and proper.

DATED this 21st day of DECEMBER 2020.

by___/s/ JAMES L. HARRIS, Jr.___
JAMES L. HARRIS, Jr.

## JURY DEMAND

Plaintiff requests a trial by jury as to all issues.

DATED this 21st day of DECEMBER 2020.

by___/s/JAMES L. HARRIS, Jr._____
JAMES L. HARRIS, Jr.